# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 12, 2011

## JAMES L. LESSENBERRY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. 09-353    Donald H. Allen, Judge**

---

**No. W2010-01549-CCA-R3-PC  - Filed October 10, 2011**

---

The Petitioner, James L. Lessenberry, appeals the Madison County Circuit Court's denial of post-conviction relief from his convictions for nine offenses:  rape, a Class B felony; incest, a Class C felony; four counts of sexual battery by an authority figure, Class C felonies; and three counts of attempted rape, Class C felonies.  Under the plea agreement, he is to serve twelve years for rape as a violent offender and six years as a Range I offender for each of the remaining convictions, with all sentences to be served concurrently with each other and consecutively to a previous drug conviction for which the trial court revoked his five-year community corrections sentence.  On appeal, the Petitioner contends the trial court erred in denying his post-conviction claim that he did not receive the effective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J, delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

George Morton Googe, District Public Defender; Gregory D. Gookin, Assistant Public Defender (on appeal); and Cynthia Chandler-Snell, Humboldt, Tennessee (at hearing), for the appellant, James L. Lessenberry.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Tommy A. Thomas, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant entered "best interest" guilty pleas pursuant to North Carolina v. Alford, 400 U.S. 25 (1970). According to the State's recitation of facts at the guilty plea hearing:

> [O]n several occasions in 2008 and once in 2009, [the Petitioner] had unlawful sexual contact with . . . his [thirteen-year-old] natural biological daughter. That led to the incest charge in January of 2009 in Count 2. There was penetration [in] January of 2009 and that's the rape charge. There was then also sexual battery by an authority figure because he is her father and attempted rape as reflected in the other counts of the indictment that range from Count 3, December 2008; Count 4, June and July of 2008; Count 5, June and July of 2008; Count 6, June and July of 2008; Count 7, June and July of 2008; Count 8, June and July of 2008; and County 9, June and July of 2008.
>
> [The Petitioner and his wife] are still married. They are I believe going through proceedings. There was a period of time when they were separated and there was some visitation and a lot of this occurred while there was the visitation going on in motel rooms and that type thing while [the victim] was alone with [the Petitioner]. I'm sorry your Honor. They are no longer married. These were through some visitation times that were arranged when these all occurred and the victim in this matter approached law enforcement and told law enforcement of these incidents . . . . There was this touching of her private areas, the sexual batteries by an authority figure and the attempted rapes. [The Petitioner] did not admit to rapes and those type things, but on some occasions he would wake up and parts of his body would be touching parts of her body.

At the plea hearing, the Petitioner acknowledged his understanding of the charges and the plea agreement and expressed his desire to accept the plea agreement. The Petitioner expressed satisfaction with the services of trial counsel. The trial court entered judgments on August 14, 2009. On September 8, 2009, the Petitioner filed a "Motion to Withdraw Guilty Plea, or in the Alternative, Petition for Post-Conviction Relief." He alleged that trial counsel met with him twice before the plea deadline, that he received the State's plea offer

on Friday before the Monday plea deadline, that he relied on the advice of counsel in accepting the plea agreement calling for the maximum sentence for every count of the indictment, and that he notified counsel "almost immediately after the entry of the plea" that he wanted to withdraw the plea. He claimed trial counsel advised him that he was a Range II offender and that he would serve all of the offenses to which he was pleading guilty at 100%. The trial court conducted a hearing on the motion to withdraw and denied relief on the basis that the Petitioner failed to establish manifest injustice.

## Hearing on Motion to Withdraw Guilty Plea

Although this appeal relates to the trial court's subsequent denial of post-conviction relief, the evidence presented at the hearing on the motion to withdraw the guilty plea is relevant to the post-conviction claim. At the hearing, trial counsel testified that he was retained to represent the Petitioner in the sexual misconduct charges and the drug case involving the alleged community corrections violation. He said that the Petitioner "had enough time on the street to basically kill that sentence under Community Corrections" and that the plea agreement did not call for the Petitioner to be resentenced. He thought he advised the Petitioner of the possibility that the Petitioner would receive additional time for the prior conviction and said he told the Petitioner that the new sentences would be served consecutively to the sentence for the prior drug conviction.

Trial counsel testified that after he received the State's notice of intent to seek enhanced punishment, he researched the proper classification of the Petitioner's prior offenses, including one under the old criminal code, determined that the Petitioner had the qualifying offenses for Range II sentencing, and advised the Petitioner accordingly.

Trial counsel testified that the Petitioner was confined in the county jail during his representation. He communicated with the Petitioner through letters and said he went to the jail every time the Petitioner's family members told him that the Petitioner wanted to see him.

Trial counsel testified that the State's first offer was for twelve years but did not address the community corrections sentence. He said he convinced the State to agree not to seek resentencing for the community corrections sentence. He agreed that he communicated the State's offer to the Petitioner on the Friday or Saturday before the Petitioner's Monday plea deadline. He said he had already obtained one continuance of the plea deadline when the negotiations were ongoing. He acknowledged writing a letter to the Petitioner that said he told the prosecutor the State's twelve-year offer was "not good enough." He did not know if the letter was written after the negotiations about the community corrections sentence.

Trial counsel testified that he discussed the Petitioner's range classification with the Petitioner on the Friday or Saturday before the plea deadline. He said he also wrote to the Petitioner and sent him copies of the State's notice of intent to seek enhanced punishment and the statute. He said that in addition to the Friday or Saturday meeting, he and the Petitioner "talked this case to death."

Trial counsel testified that on the day of the guilty plea hearing, he corrected his previous erroneous advice that the Petitioner would be required to serve 100% for each offense, rather than for only one of the offenses. He said he advised the Petitioner that the other offenses would be served at 30%, that the Petitioner was a Range II offender, and that the Petitioner could face a sentence of more than twelve years if the case went to trial. He said that whether the Petitioner would serve his sentences at 30% or 100% was important in the scenario of the Petitioner going to trial and being convicted of a lesser included offense of rape but that it had no effect on the plea offer. He said the Petitioner signed pretrial statements admitting seven or eight of the offenses. He said he also advised the Petitioner about the enhancement factors that the court might apply to lengthen the individual sentences. Trial counsel said that on the Friday or Saturday before the guilty plea hearing, the Petitioner did not ask him to obtain a continuance. He said the Petitioner indicated he would accept an offer of nine years. He advised the Petitioner that the twelve-year offer was the best offer the State would extend. He said the Petitioner stated that he would let trial counsel know on Monday how he wanted to proceed. He did not recall the Petitioner's mother requesting more time on the night before the hearing. He recalled, however, that on the morning of the hearing, the Petitioner wanted to delay the guilty plea. He said his response was, "That we might as well go ahead and do it."

Trial counsel recalled that on the day of the Petitioner's arraignment, the Petitioner expressed his preference to plead guilty in order for the victim and his other children not to have to testify. He said he urged the Petitioner to wait in order to allow him to investigate the witnesses and negotiate with the State for a plea offer.

Trial counsel testified that he received a letter in which the Petitioner requested that trial counsel represent him in withdrawing the plea and offered to pay an additional fee. He said he viewed the Petitioner's letter as asking whether the Petitioner should try to withdraw the plea, rather than as a statement that the Petitioner wanted to withdraw the plea. He said he advised the Petitioner that accepting the plea was a wise decision and that the Petitioner should not attempt to withdraw it. He said that as an officer of the court, he did not think he could represent the Petitioner because he believed the Petitioner entered his plea freely, voluntarily, and intelligently. He said a child came to his office with a piece of paper containing questions about the range classification, release eligibility date, and actions taken by counsel in the Petitioner's case. The child said she would return for the paper in a few

days.  He said that on September 1, 2009, he wrote a letter to the Petitioner that addressed the questions and enclosed a copy of the paper he received from the child.

On cross-examination, trial counsel testified that he was able to question the victim at the preliminary hearing.  He said he communicated with the Petitioner in person, in writing, and on the telephone with the Petitioner's mother present.  He said he had hoped that one of the Petitioner's ex-wives had a calendar showing that the ex-wife's children were with the Petitioner on the day the rape was alleged to have occurred.  He said that he investigated but that it "did not turn out the way I wanted it to."

Trial counsel testified that at one point, he proposed a plea agreement to the State.  He noted that the Petitioner ultimately was allowed to plead guilty as a Range I offender but could have been classified as Range II.  He said he advised the Petitioner of the effect of the prior convictions, both as to sentencing and as to impeachment.  He said that on the day of the guilty plea, he advised the Petitioner of the changes in the plea agreement that the Class C felonies would be served at 30%, not 100%.  He said the trial court conducted a review on the record of the plea, the Petitioner's rights, the sentencing ranges, and the sentences called for by the agreement.  He said the Petitioner indicated he wanted to proceed with the guilty plea.

Trial counsel testified that the Petitioner's statements were a "big part" of his discussions with the Petitioner.  He said the Petitioner wanted to have the statements suppressed.  He said that there were "a lot of hurdles to jump" to have the statements suppressed and that if they were successful, the statements could still be used to impeach the Petitioner if he testified.  He said that if the Petitioner did not testify, the victim would testify "with no one to contradict what she said."  He said the statements also enhanced the credibility of some of the State's witnesses.

On redirect examination, trial counsel testified that the trial court had the Petitioner initial the changes to the percentage of service language in the plea agreement.  He said the twelve-year sentence was negotiated on the basis that if the Petitioner were convicted of a Class B felony as a Range II offender, the sentencing range would be twelve to twenty years.

The Petitioner testified that trial counsel met with him twice about plea offers.  He said he wanted a continuance on the day of the arraignment and denied that he wanted to enter a guilty plea that day.  He acknowledged that he told trial counsel on the day of the arraignment that he did not want his children to have to testify.  He said that on the day of the arraignment, he had not been given a plea offer from the State.

The Petitioner testified that trial counsel conveyed the State's twelve-year offer to him on the Friday before the Monday plea deadline. He said that on the day of the plea hearing, he asked trial counsel to request a continuance because he wanted to get a "second opinion" from another attorney. He said trial counsel claimed they could not get another continuance and said that if he did not enter his plea that day, the case would go to trial and he would get a longer sentence than called for in the plea agreement.

The Petitioner testified that he accepted the plea agreement in part because he thought that all of the charges required 100% service. He said he did not learn otherwise until he was at the "podium" on the day of the plea hearing. He said his understanding from trial counsel with respect to the community corrections sentence was that he could be resentenced for another five years. He said he had already served almost five years for the conviction.

The Petitioner testified that he spoke with his mother on the day of the guilty plea hearing about withdrawing the plea. He said he wrote a letter to trial counsel, as well. He said trial counsel responded that he would not represent the Petitioner in a motion to withdraw and that there was nothing trial counsel could do. The Petitioner acknowledged telling the trial court that he was satisfied with trial counsel's representation of him and the amount of time he spent consulting with trial counsel.

On cross-examination, the Petitioner acknowledged that as evidenced by the transcript of the guilty plea, he indicated that he was satisfied with trial counsel, that he understood the range of punishment, that he understood the plea agreement, that he was entering the plea freely and voluntarily, that he had not been subjected to force or promises other than the terms of the agreement, that he was entering the plea because it was his best course of action, and that he thought his attorney had advised him of all the possible defenses. He agreed that he told the trial court he did not need to address anything trial counsel had said or done. He acknowledged that he initialed the changes to the release eligibility dates listed in the written plea agreement while he was at the podium. He said that he signed the written plea agreement on the previous Friday or Saturday and that counsel told him he would "pull" the paperwork on Monday if the Petitioner decided not to go forward. He said that when he signed the document, the sentences were listed with 100% service and that he did not remember discussing the change to 30% before he entered the plea.

On redirect examination, the Petitioner testified that his plea was a best interest plea. On questioning by the court, he acknowledged that the trial court advised him at the plea hearing that he could not withdraw the plea for any reason and that he told the court he understood. He said he wanted to withdraw the plea because he was not guilty. He said, "I just feel it would be in my best interest" to withdraw the plea. He said his statements to law enforcement did not contain admissions to the crimes. He reiterated that he wanted a

-6-

continuance in order to have another attorney give him a second opinion about the plea agreement. He said, "I didn't understand all this." When asked why he did not say anything when the trial court questioned him at the hearing, he said, "I didn't know I could speak up."

Barbara Swafford, the Petitioner's mother, testified that she and her ex-husband retained trial counsel to represent the Petitioner. She said that she did not speak with trial counsel regularly but that on the Sunday evening before the plea hearing, she left a message for trial counsel. She said that she called trial counsel on Monday morning and told him that the Petitioner wanted a week to think over the plea agreement but that trial counsel said no. She said she met with trial counsel on the morning of the hearing and told him again that the Petitioner wanted a continuance. She said trial counsel told her that the case had been continued once and that it was best to go ahead and resolve the case with the plea. On cross-examination, Ms. Swafford denied that she encouraged trial counsel to finalize the plea agreement.

In rebuttal, trial counsel testified that he spoke with Ms. Swafford periodically about the case and that the Petitioner gave him a release to discuss the case with Ms. Swafford. He said he remembered talking to Ms. Swafford before the plea hearing but did not recall exactly when the conversation took place. He said that Ms. Swafford's inflection when she said, "You don't see any reason to put this off, do you," indicated she wanted the plea agreement to go forward. He said that she asked whether the offer was the best one the Petitioner would receive and that he said it was. He identified two chairs in the courtroom where he and the Petitioner discussed the change in the plea agreement from 100% to 30% release eligibility. The transcript of the guilty plea hearing, the September 1 letter trial counsel wrote to the Petitioner, and the written plea agreement were received as exhibits.

The trial court denied the motion to withdraw the guilty plea. In its order, the court declined to rule on the post-conviction allegations, stating that it would address them at a later date.

**Post-Conviction Hearing**

The trial court conducted a hearing on the motion to reconsider and the post-conviction claims. We note that the "Motion to Withdraw Guilty Plea, or in the Alternative, Petition for Post-Conviction Relief" that raised the post-conviction allegations was verified by the Petitioner and contained the certification of counsel required by Tennessee Rule of the Supreme Court 28, Appendices A and C. After the trial court denied the motion to withdraw the guilty plea, the Petitioner filed a motion to reconsider.

Trial counsel testified that he represented the Petitioner for a community corrections violation and the sex offense charges. He said he was retained by the Petitioner's mother and

his father or grandfather. He did not know how many times he met with the Petitioner, but he recalled about four visits to the jail in addition to telephone calls and consultation at court appearances.

Trial counsel testified that the victim's testimony was the most damaging to the Petitioner's case, followed by the Petitioner's statements. He said that he and the Petitioner discussed a motion to suppress at length and that he did not file one. He said he advised the Petitioner that in his opinion, the statements would be found to have been given voluntarily. He said he also told the Petitioner that if he were successful in having the statements suppressed and the Petitioner did not testify at the trial, the victim's testimony would be uncontroverted through cross-examination.

Trial counsel acknowledged that the Petitioner said he did not have his glasses or contacts. He said he saw the Petitioner reading documents and thought the Petitioner seemed to be able to do so fairly well. He did not know whether the Petitioner received his contact lenses at the jail but said the Petitioner reported that the officers read the Petitioner's statements to him. Trial counsel said he also read the statements to the Petitioner, who claimed that the police "left a lot of stuff out." He said he did not think a suppression hearing would have benefitted the Petitioner. He said the Petitioner's statements related to incidents other than the rape charge. He said that he investigated a possible alibi for the date of the rape but that the alibi "did not pan out." He did not recall anyone telling him about photographs taken after the date of the rape that depicted the Petitioner and the victim smiling, nor did he recall anyone telling him that telephone records would show that the victim had telephone contact with the Petitioner after the rape. He said he filed a motion for discovery and obtained discovery but did not recall filing any other motions.

With regard to the Petitioner's range classification, trial counsel testified that he did not question that the Petitioner was a Range II offender, rather than Range I. He said he reviewed the Petitioner's prior convictions and the length of the sentences in reaching his conclusion. He said that he received computer photographs of the victim in provocative poses but that the prosecutor was not swayed in plea negotiations when he mentioned this evidence. He recalled that the victim's mother had an ex-husband who was incarcerated for a rape conviction. He said that there was an allegation that the victim's mother "was putting the daughter up to this" and that the victim withstood extensive cross-examination at the preliminary hearing. He thought that members of the family told him that the victim was sexually active with a young man but did not recall allegations that the victim acted inappropriately with her brother. He said the Petitioner reported that the family often went nude. He reviewed a videotape that allegedly showed "some of this activity going on" but said it did not depict such activity.

Trial counsel testified that the Petitioner never expressed dissatisfaction with his handling of the case. He said the Petitioner never notified him that he did not understand the plea and its consequences or a trial and its consequences. Counsel said that on the day the indictment was returned, the Petitioner said he did not want the victim to have to testify and told trial counsel to obtain the best plea agreement possible. Counsel said that he suggested the Petitioner take a polygraph examination but that the Petitioner declined. He said it would have been helpful in plea negotiations if the Petitioner had passed a polygraph examination. He denied that he told the Petitioner or the Petitioner's family that he would have the Petitioner out of jail in two days if the victim recanted, but he admitted advising the Petitioner that he could file a coram nobis petition if the victim recanted after the best interest plea.

Trial counsel testified that he did not recall anything in the victim's medical records that would incriminate the Petitioner. He said he did not speak with an expert or medical care provider about whether the records were consistent with the victim's account of the crimes. He said he did not do so because the emphasis shifted from trial preparation to plea negotiations. He acknowledged that if there were evidence that the victim's account was inconsistent with the medical records, it would have helped secure a favorable plea agreement.

Trial counsel testified that it was his practice to make copies of discovery materials and provide them to his clients, although he could not recall whether he did so in the Petitioner's case. He said that the Petitioner gave him a release to discuss the case with the Petitioner's mother and that he met with her frequently. He said there were other people the Petitioner did not want him to talk to, one of whom was Mary Montes De Oca, the Petitioner's girlfriend or fiancee. He did not recall whether he questioned the victim at the preliminary hearing about a three-week delay between the rape and her report of it, nor did he recall anyone giving him a photograph of the Petitioner and the victim taken a week after the rape.

Trial counsel testified that he and the Petitioner discussed the consequences of various plea agreement alternatives "nearly every time" they met. He said that on the day of the plea hearing, the Petitioner asked if they had to resolve the matter that day. He said the Petitioner "wanted more time to talk to Mary." He acknowledged he did not ask the trial court for a continuance. He said that the victim and "various players" were present in court that day based upon the Petitioner's decision to enter the plea and that they went forward with it. He said that although he incorrectly advised the Petitioner on the Saturday before the plea hearing that the offenses all required 100% service, he corrected himself on the day of the hearing. He said there was "quite a bit of time" after the conversation and before the Petitioner's case was called. He said that the Petitioner wanted a nine-year plea agreement

but that the prosecutor would not agree to less than twelve years. He said he reviewed the agreement with the Petitioner and explained that based upon the Petitioner's prior convictions and the enhancement factors, the Petitioner could easily receive a sentence of at least twelve years if he went to trial. He said he explained to the Petitioner that parole eligibility did not mean that parole would be granted and that parole often was not granted in sex offense cases because a defendant must undergo psychological evaluation which typically did not recommend parole unless the defendant admitted his crime. He said he did not think the Petitioner was likely to admit guilt.

On cross-examination, trial counsel testified that the shift of focus from trial preparation to plea negotiation took place after the preliminary hearing but before the indictment was returned. He identified the July 8, 2009 notice of intent to seek enhanced punishment and said the plea was entered on August 10, 2009. He said that he reviewed the notice with the Petitioner and that the Petitioner acknowledged the prior convictions. He said that in his opinion, the two felonies listed in the notice qualified the Petitioner for Range II sentencing and that additional misdemeanors were listed. He reiterated that he conferred with the Petitioner several times on court dates, by telephone, and at the jail. He said they reviewed the Petitioner's pretrial statements. He said he found no grounds to support a motion to suppress the statements. Regarding the statements, trial counsel said the Petitioner claimed he was not wearing his glasses but noted that the Petitioner had initialed almost every line of the statements. He said that when he read the statements to the Petitioner, the Petitioner said he did not remember the statements being exactly the way that counsel read them. He said the Petitioner claimed that information was omitted that made the statements more damaging. He said he and the Petitioner reviewed the probable effect of the statements at trial in light of the victim's testimony at the preliminary hearing. Three statements given by the Petitioner were received as exhibits.

Trial counsel testified that the Petitioner was aware of the victim's testimony at the preliminary hearing and that they reviewed the victim's statements before the guilty plea. He said the Petitioner never expressed an opinion regarding the impact of the victim's testimony at trial other than that the Petitioner did not want her to have to testify again. Three statements given by the victim were received as exhibits. Trial counsel denied that any family members other than the Petitioner expressed a desire that the victim not have to testify. He reaffirmed that he discussed a polygraph examination with the Petitioner and that he did not discuss it with anyone else.

Trial counsel testified that he had a fairly lengthy consultation with the Petitioner about the math involved in the release eligibility calculations. He said that the Petitioner kept insisting he would "do nine" but that he told the Petitioner that declining the twelve-year plea offer was not worth the risk of receiving a more lengthy sentence after a trial. He said that

the Range II sentence for rape was twelve to twenty years and for the other C felony counts was six to ten years. He said they discussed the possibility of consecutive sentencing. He agreed that the Petitioner pled as a Range I offender, received concurrent sentences, was permitted to make a best interest plea, and avoided resentencing for the prior community corrections sentence.

Trial counsel testified that at the plea hearing, the Petitioner did not indicate that he was not acting freely and voluntarily. He saw no signs of coercion. He said that during the plea hearing, they had to stop to correct and initial a fee that was stated incorrectly. He said that the Petitioner did not have a problem with this change and that the total amount did not change. Trial counsel said that he "absolutely" would have prepared for and taken the case to trial if the Petitioner had wanted to do so. He said he would have encouraged the Petitioner to go to trial if the alibi and the video of nudity in the home had "checked out." He said that he felt comfortable and prepared at the plea hearing and that he felt like he had adequately prepared the Petitioner.

Trial counsel testified that the Petitioner's mother contacted him before the plea hearing and told him she thought the Petitioner's best course was to accept the plea agreement. He denied that she asked him to request a continuance. He said that after the plea was entered, the Petitioner's mother told him "that Mary was going to see an attorney."

Trial counsel testified that the provocative photographs of the victim surfaced shortly after the preliminary hearing. He said that the medical records were generated after the indictment was returned and that the Petitioner had already expressed his desire for the best plea agreement possible. He said that he had learned from experts in other cases that there was rarely medical evidence of a sexual assault because any trauma may heal. He said that the Petitioner admitted being naked and aroused in bed with the victim but that the Petitioner denied that intercourse occurred.

Barbara Swafford testified that she and her ex-husband retained trial counsel on behalf of the Petitioner. She said she was in communication with the Petitioner. She said she called counsel on the morning of the plea hearing and told him "that we wanted some more time" to consider the plea agreement. She said counsel told her they needed to proceed that day. She said that she came to court and requested a second time that trial counsel seek a continuance but that counsel told her everyone was present and they needed to go forward, although trial counsel said he would discuss it with the Petitioner.

Ms. Swafford testified that she went to trial counsel's office to inquire about withdrawing the plea and thought she did so on the day after the plea was entered. She said that she talked to a female employee and that counsel called her later. She said counsel

claimed there was no way to withdraw the plea. She said that on the day of the plea hearing, counsel told her and other members of her family that if the victim recanted, the Petitioner would be released within forty-eight hours. She thought the Petitioner relied on this statement.

Ms. Swafford testified that she and her granddaughter met with trial counsel at his office and asked whether there would be physical evidence of a rape. She said counsel stated that this evidence would come out if there were a trial. She said that she talked to the Petitioner almost daily but that she had difficulty discussing matters with counsel that the Petitioner wanted her to address. She said that due to counsel's lack of responsiveness, she asked him at one point whether he believed the Petitioner was guilty. She said she thought that counsel should have listened in more detail to the Petitioner. She said her understanding was that the Petitioner and counsel met a couple of times, one of which was the Friday or Saturday before the plea hearing.

On cross-examination, Ms. Swafford testified that she was at the preliminary hearing but that she had little access to the discovery and no access to the victim's statements. She said, however, that she was able to review her son's statements.

One of the Petitioner's daughters testified that she was present when trial counsel said the Petitioner would be released and the charges dismissed if the victim recanted. She said that she discussed this statement with the Petitioner and that he thought it was important. She said that counsel never called her but that she tried to contact him. She said that she asked questions but that trial counsel always responded that it was not important unless the case went to trial. She said that she did not think counsel "really talk[ed] to [the Petitioner] at all while he was in jail" and that the Petitioner always asked her whether she had spoken with counsel. She said that on the day of the plea hearing, she heard her grandmother ask counsel for more time but that she did not hear his response.

On cross-examination, the Petitioner's daughter identified Ms. Swafford as her paternal grandmother. She said the Petitioner gave trial counsel permission to discuss his case with both Ms. Swafford and her. She said counsel was incorrect if he said the waiver applied only to Ms. Swafford. On redirect examination, the Petitioner's daughter testified that when she was present, counsel discussed the case with her grandmother and her and that he never asked to speak with her grandmother privately.

Mary Montes De Oca testified that the Petitioner was her fiance. She said that after the hearing at which the Petitioner entered his best interest plea, trial counsel met with the Petitioner's mother, the Petitioner's brother, and her "to discuss any information we had." She said that although she did not hear counsel say that the Petitioner would be released

within forty-eight hours if the victim recanted, the Petitioner and his family members told her this. She said the Petitioner instructed her not to be involved in the case and told her not to come to any hearings. She said she did not attend the plea hearing.

Ms. De Oca testified that when she tried to contact trial counsel before the plea, "they wouldn't let me." She said that she and the Petitioner talked as many as several times a day while he was incarcerated and that he gave her information to convey to counsel. She said, however, that when she tried to convey the information, she was told "We can't give out any information to you." She said that there were three-way telephone conferences involving counsel, the Petitioner, and her but that she did not think counsel was aware she was listening to the call. When asked how often trial counsel communicated with the Petitioner, she responded, "He wasn't basically."

Ms. De Oca testified that on the weekend before the plea deadline, the Petitioner's mother tried several times unsuccessfully to contact trial counsel to request a continuance. She thought she might have tried to contact counsel at his office, as well. She said she tried to find another lawyer to represent the Petitioner.

Ms. De Oca testified that on the day of the arraignment, she gave trial counsel a photograph of the Petitioner and the victim in which the victim was "smiling, happy, leaning on her dad." She said the photograph was taken seven days after the date of the alleged rape. She said that about one week later, she gave trial counsel the Petitioner's and the victim's telephone numbers and asked him to subpeona the telephone records. She identified copies of telephone records and testified that they showed calls "all the time" between the victim and the Petitioner, including after the date of the alleged rape. The telephone records were received as an exhibit. She said that to her knowledge, trial counsel did not investigate based on the information she provided.

Ms. De Oca testified that the Petitioner wanted to withdraw his plea immediately. She said that either she or the Petitioner's mother called trial counsel's office to notify him.

On cross-examination, Ms. De Oca acknowledged that the Petitioner, not she, was trial counsel's client. She said that she prepared a form that would allow counsel to talk to her about the Petitioner's case but that the Petitioner told her it was not a good idea. She could not say whether there was more than one three-way telephone call during which counsel did not know she was listening to the conversation. She acknowledged that the Petitioner was the person ultimately responsible for making the decision about the case and that she was not present when he entered his plea.

The Petitioner testified that he wanted the judge to consider his testimony from the hearing on the motion to withdraw the guilty plea. He said that he agreed to trial counsel's suggestion that he take a polygraph examination but that counsel never arranged it. He said he first discussed taking a polygraph examination with the investigators, who told him to talk to his attorney. He said this was before the preliminary hearing.

The Petitioner testified that he wanted more time to consider the plea agreement after meeting with trial counsel on Friday afternoon before the Monday plea deadline. He said he had concerns about counsel's performance and wanted to talk to another attorney. He claimed he requested that counsel continue the case but that counsel said the case could not be continued. He said he felt rushed into entering the plea. The Petitioner said he had concerns about the changes in the plea agreement for the percentage of service for the sentences. He said that while the judge was addressing him, he was asking counsel questions about the range classification. He said trial counsel was unsure whether the Petitioner was a Range I or Range II offender.

The Petitioner testified that he gave information to trial counsel but that counsel told him the information was not necessary unless the case went to trial. He said that to his knowledge, counsel never complied with his request to subpoena telephone records. He claimed that when he told counsel of several photographs of himself and the victim taken after the alleged rape and that he continued to take the children to school, counsel "just discarded" the information.

On cross-examination, the Petitioner acknowledged that during the time period for the Class C felonies, he and the victim spoke on the telephone, he had visitation, and he took her to school. He acknowledged he and counsel discussed the victim's statements and his statements. He said he was present at the preliminary hearing when the victim testified. He denied that he and counsel discussed the notice for enhanced punishment and claimed that counsel merely mailed him a copy of it. He admitted, however, that they discussed Range I and Range II classification. He said that he was classified as a Range I offender in the plea agreement and that he was allowed to enter a best interest plea. He remembered discussing the possibility of consecutive sentencing with trial counsel. He acknowledged that the trial court reviewed the plea and sentence with him. He agreed that he told the court at the plea hearing that he was satisfied with trial counsel's representation and that he acknowledged his understanding of what was taking place.

The Petitioner testified that he decided "basically immediately" after entering the plea that he wanted to withdraw it. He said he asked trial counsel before he entered the plea if his case could be continued but counsel said they needed to proceed that day. He acknowledged

-14-

that it was his decision whether to accept the plea agreement and that he told counsel he did not want to put his daughter through a trial.

When asked by the trial court whether he personally told the trial court that he wanted a continuance, he said trial counsel told him that he could not address the court. He recalled, however, that he responded negatively when the trial court asked him whether his attorney had done anything that he wanted to address with the court. He acknowledged that he told the trial court that he had not been forced or pressured to enter the plea, nor had any threats or promises been made. He said he felt pressured by counsel's statement that the case would not be continued. He acknowledged that he should have asked the judge for a continuance but maintained that at the time, he did not think he could.

On redirect examination, the Petitioner testified that he was nervous on the day of the plea hearing and at the post-conviction hearing. He said that he was nervous about speaking in public and that he and his family hired a lawyer to speak for him. He said he relied on trial counsel's advice. He said he did not feel like he had a choice when he entered the plea and still felt he had no choice.

Although the trial court took the matter under advisement, the judge observed after receiving the proof:

> I feel like I gave the Defendant every opportunity to speak up and to tell me if he was dissatisfied with his lawyer or if he didn't understand something about the plea arrangement or, you know, even after the facts were stated, you now, "Do you still want to go forward with this?" He never once indicated any hesitancy about pleading or not, you know, going forward with the best interest plea.

In its order denying relief, the trial court found that the Petitioner entered a knowing, voluntary, and intelligent best interest plea, that the testimony of trial counsel was credible, that the Petitioner's testimony was not credible, and that trial counsel provided effective assistance. The court denied post-conviction relief and denied the motion to reconsider the motion to withdraw the plea.

On appeal, the Petitioner contends that he did not receive the effective assistance of counsel. The State counters that the trial court correctly found that the Petitioner failed to prove this claim. We agree with the State.

We begin by noting the unusual procedure by which the Petitioner raised his post-conviction allegations. As we have noted, he filed a "Motion to Withdraw Guilty Plea, or in the Alternative, Petition for Post-Conviction Relief." The motion requests that the trial court grant relief either under Tennessee Rule of Criminal Procedure 32(f), in its nature a part of the conviction case, or under the Post-Conviction Procedures Act, in its nature a collateral attack on a final conviction. Compare Tenn. R. Crim. P. 32(f)(2) (permitting, in limited circumstances, withdrawal of a guilty plea after the sentence is imposed but before the judgment becomes final) with T.C.A. § 40-30-102 (2010) (permitting a post-conviction challenge to a conviction "within one (1) year of the date of the final action [on appeal] or, if no appeal is taken, within one (1) year of the date on which the judgment became final"). Thus, the Petitioner requested alternative relief in the conviction case that should have been pursued in two separate forms of action. A defendant who pleads for relief in this alternative manner runs the substantial risk that a trial court will interpret the pleading as either a motion to withdraw the guilty plea or as a post-conviction petition and dispose of it in its entirety on a singular basis. In such a case, should the trial court deny the motion to withdraw the plea, the defendant could either file a direct appeal from the judgment or, otherwise, forego the appeal and file a post-conviction petition collaterally attacking the judgment. On the other hand, should the trial court construe the pleading as a petition for post-conviction relief, the petitioner risks that the court will dismiss the petition as having been prematurely filed, and in the meantime, the thirty-day window for withdrawing the guilty plea will have expired. See T.C.A. § 40-30-102(a) (providing for post-conviction petitions to be filed within one year of a final judgment); Tenn. R. Crim. P. 32(f)(2) (allowing withdrawal of a guilty plea before a judgment becomes final); State v. Green, 106 S.W.3d 646 (Tenn. 2003) (holding that a judgment entered pursuant to a guilty plea becomes final thirty days after the plea is accepted and the defendant is sentenced). A defendant must take care not to pursue both a direct appeal and post-conviction relief at the same time. See Gary Rocco Denami v. State, No. 01C01-9507-CR-00224, Davidson County (Tenn. Crim. App. July 5, 2006) ("The Post-Conviction Procedure Act does not authorize the filing of a post-conviction petition while a direct appeal of the conviction is pending in the Tennessee courts.").

All of this is relevant in order for this court to determine whether there was a valid post-conviction proceeding for the trial court to adjudicate and whether there is a valid appeal before this court. We note that these issues were not raised by either party. The Petitioner did not file a direct appeal of his convictions after the trial court denied his motion to withdraw his pleas. Rather, the record reflects that the parties and the trial court all proceeded with the understanding that the Petitioner desired to pursue the post-conviction claims he raised in the earlier pleading. While we do not condone hybrid pleadings like the one filed by the Petitioner, we note that in this case, the pleading complied with the requirements for a proper post-conviction petition, including the certification of counsel and verification by the petitioner. See generally T.C.A. § 40-30-104; Tenn. R. Sup. Ct. 28, §

5(D), (E), Apps. A-C.  We also note that the trial court, without objection by the State, held the Petitioner's post-conviction claims in abeyance and allowed the Petitioner to litigate them after the trial court ruled against the Petitioner on the Rule 32(f) motion to withdraw the plea. In this rare circumstance, we conclude that we may consider the merits of the Petitioner's appeal in his post-conviction case.

We turn now to the merits of the Petitioner's claim. The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence.  T.C.A. § 40-30-110(f) (2006).  On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings.  Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001).  Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness.  Id. at 457.  Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right.  T.C.A. § 40-30-103 (2006).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution.  State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test.  Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome."  Id.  When a petitioner pleads guilty, he must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty.  See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Adkins v. State, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were "within the range of competence demanded of attorneys in criminal cases." Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Baxter, 523 S.W.2d at 936. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See DeCoster, 487 F.2d at 1201; Hellard, 629 S.W.2d at 9.

In the present case, the trial court discredited the Petitioner's testimony and accredited trial counsel's testimony. The record reflects that trial counsel consulted with the Petitioner extensively, that they discussed the proof, that he investigated possible alibi evidence but found it lacking, that he negotiated with the prosecutor for a favorable plea agreement, that he advised the Petitioner of the likelihood of a more lengthy sentence if the Petitioner's case went to trial, that he discussed the plea offer with the Petitioner, and that he corrected his initially mistaken advice about the percentage of service for the Class C felonies. The record also contains proof to support the trial court's finding "[t]hat nothing . . . suggests that the Petitioner was in any way pressured or coerced into entering his guilty/best interest plea, or that the Petitioner desired to go to trial in this case." We conclude the evidence does not preponderate against the court's findings. The trial court properly concluded that the Petitioner failed to prove his ineffective assistance of counsel claim. The Petitioner is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE